**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA

v.                                                                  CASE NO. 3:05-cr-31-J-32TEM

VIBOL HANG

_____

**REPORT AND RECOMMENDATION**[1]

The matter is before the Court on Defendant's Motion to Suppress Fruits of Execution of Search Warrant (Doc. # 14) on the ground the affidavit for the warrant lacked probable cause for the search. The United States filed its response in opposition (Doc. #19) arguing that the search should not be suppressed because the agent had a good faith belief that the warrant was proper and that, in fact, it was.

The Court held oral argument on March 8, 2005 (Doc. #22). No witnesses testified as the Defendant's challenge is to the content of the affidavit rather than to the execution of the search. As allowed after the argument, Defendant filed a response to the United States claim for the "good faith exception" to the exclusionary rule (Doc. #23).

*Facts:*

A special agent of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") presented a 19-page affidavit for a search warrant to a federal magistrate judge on

---

[1] Any party may file and serve specific, written objections hereto with TEN (10) DAYS after service of this Report and Recommendation. Failure to do so shall bar the party from a de novo determination by a district judge of an issue covered herein and from attacking factual findings on appeal. See 28 U.S.C. §636(b)(1); FED.R.CIV.P. 72(a), 6(a) and (e); Local Rules 6.02(a) and 4.20, United States District Court for the Middle District of Florida.

November 17, 2004 (Doc. #21, Gov't Ex. 1).  The magistrate judge signed a warrant authorizing a search for certain firearms at Defendant's residence.  Subsequent to the search, Defendant was indicted.   Defendant seeks to suppress use of evidence seized during the search.

### *Affidavit:*

The affidavit traces a lengthy investigation by ATF agents into alleged "straw purchases" of firearms in which a person buys a firearm and signs the required forms for another person, thus keeping the real purchaser's identity off the records.  A person named Ronnie Thomas was identified as the purchaser of numerous firearms in 2003, with some of the firearms later recovered by police in Massachusetts.

In the fall 2004, agents learned that Thomas was purchasing firearms from dealers. Based on information obtained from surveillance, watching a security video at one firearms store, and showing photospreads to firearm store owners or employees, the agents identified Thomas and the defendant visiting firearms stores together on October 29, November 1 and November 10.  Thomas purchased firearms on some of those occasions. At some point, the agents further determined that both Thomas and Defendant worked at Mac Paper Converters, and that Defendant had a felony record, thus he could not be a direct purchaser from a dealer.   Through surveillance and motor vehicle records, they identified Hang as an owner and driver of a white Lincoln Navigator and Thomas as the driver of a white Ford Expedition.

On November 12 and 13, 2004, Thomas purchased firearms at Shooters of Jacksonville, a firearms dealership, and advised the salesman he would pick them up on November 15, 2004.   On that date, AFT agents conducted surveillance and saw the

defendant's Navigator was parked next to Thomas' white Expedition in the Mac Paper employee parking lot.  At 11:00 a.m., an agent who had not yet seen photographs of Defendant or Thomas watched as an Asian male[2] and a black male[3] left Mac Papers with the Asian male driving the Navigator to Shooters, arriving at 11:12 a.m.  ATF agents watched Thomas leave Shooters carrying two black boxes at 11:18 a.m.  Thomas entered the passenger seat of the Navigator and which was driven back to Mac Papers at 11:25 a.m. by the Asian male.  Agents lost sight of the Navigator for approximately 30 seconds in the parking lot, but reported they were sure the men could not have placed anything in Thomas's vehicle without being seen. After the 30 seconds, they saw both the Asian male and the black male walk away from the Navigator and enter Mac Paper without carrying anything in their hands.  The Navigator was not parked near the Expedition.

From 1:00 p.m. to 1:15 p.m., agents did not maintain visual surveillance of the Navigator.

At 3:12 p.m., a different Asian male (not Defendant),  wearing a red shirt and jean shorts, came out of Mac Paper and entered the driver's side of the Navigator and remained inside for one minute.  He had nothing in his hands when he exited the vehicle and returned to the business.

At 5:00 p.m., two Asian males entered the vehicle. The one who entered the driver side was the same one who walked away from the vehicle at 11:26 a.m. and who later

---

[2]Defendant is an Asian male.

[3]The affidavit never specifically identifies Thomas as a black male; however, the firearms dealer later that morning reported that Thomas picked up the two firearms he purchased and got in the front seat of the white Lincoln with them.  Agents had followed the Navigator to the store and watched Thomas enter.

drove it to the residence identified as Defendant's house. The other Asian male was wearing a blue shirt and jean shorts. They left the vehicle after a minute and returned to the business, carrying nothing in their hands.

At 5:30 p.m., an Asian male who one agent identified as Hang, entered the vehicle by himself and drove away from Mac Paper's parking lot. He stopped at a private school for about two minutes and at a discount beverage store before arriving at the 11418 Lumberjack Circle West address identified as Defendant's residence. Agents saw Hang leave the vehicle and then open the rear passenger door. After about 15 seconds, he carried a dark-colored gym bag that appeared to contain a weighted object pulling the bottom of the bag toward the ground and entered the garage of the house with it. A child about seven years old also exited that door of the vehicle.

Agents sought the warrant to search the house and car for the vehicle two days later.

### ***Probable cause for issuance of warrant***

The Fourth Amendment to the Constitution states"

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Probable cause may be described as the probability of a fact being more likely than not. The Supreme Court has indicated an effort to place a precise numerical degree of certainty in defining probable cause may not be helpful, stating " .... only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause." *Spinelli v. United States,* 393 U.S. 410, 419 (1969).

It may be determined by circumstances rather than direct evidence.

"In dealing with probable cause, ... as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Brinegar v. United States*, 338 U.S. 160, 176 (1949).

The law is clear that there is a preference for searches occurring under a warrant as opposed to searches without a warrant. *United States v. Ventresca*, 380 U.S. 102, 106-107 (1965). In fact the Supreme Court has stated that "in a doubtful or marginal case a search under a warrant may be sustainable where without one it would fall." *United States v. Leon*, 468 U.S. 897, 914 (1984) (internal quotations omitted). As a result of this preference, the Court held in *Ventresca, supra*, 380 U.S. at 108, that:

> " ... affidavits for search warrants ... must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in the area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting."

The *Ventresca* Court continued on to state that where the underlying circumstances are detailed and a magistrate has found probable cause, "the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner." *Id.* at 109.

In determining probable cause, the totality of the circumstances should be considered. *Massachusetts v. Upton*, 466 U.S. 727 (1984).

### *Good faith exception*

The exclusionary rule is a "judicially created remedy designed to safeguard Fourth Amendment rights generally" and not "a personal constitutional right of the party aggrieved." *United States v. Calandra*, 414 U.S. 338, 348 (1974). Whether the exclusionary rule should be applied in a case is a different question than whether the Fourth Amendment rights of a party were violated by police conduct. *Illinois v. Gates,* 426 U.S. 213, 223 (1983).

In 1984, the Supreme Court reviewed the exclusionary rule as applied to situations in which officers had obtained search warrants prior to conducting a search. In *United States v. Leon*, 468 U.S. 897 (1984) and *Massachusetts v. Sheppard*, 468 U.S. 981 (1984), the Court held the exclusionary rule should not be applied to bar a prosecutor's use of evidence obtained by officers acting in a reasonable reliance on a search warrant issued by a neutral and detached magistrate. In those cases, the Supreme Court found that in some circumstances when the warrant or affidavit for an authorized search are deficient, the executed search may still be upheld if the agent conducting the search relied upon a good faith belief in its validity. In *Sheppard, supra,* 468 U.S. at 989-90, the Court stated "... we refuse to rule that an officer is required to disbelieve a judge who has just advised him, by word and by action, that the warrant he possesses authorizes him to conduct the search he has requested."

In *Leon, supra,* 468 U.S. at 923, the Court stated there were four conditions under which suppression would still be appropriate: (1) when the issuing judge is misled by information in the affidavit that the affiant knows or should know is false, (2) when the issuing judge completely abandons his judicial role, (3) when the affidavit includes so little

indicia of probable cause that official belief in its existence is entirely unreasonable, and (4) when the warrant is so facially deficient that the executing officer cannot reasonably presume it to be valid.

In considering suppression of a search conducted by a warrant, the appellate courts have held the Court may look first to the good faith issue and, if good faith is found, it need not further exam probable cause. *United States v. Cavazos*, 288 F.3d 706, 709 (5th Cir. 2002). *See also, United States v. Martin,* 297 F.3d 1308 (11th Cir. 2002).

### *Analysis*

Defendant in the instant case presents a two pronged argument. First, Defendant argues that the affidavit did not contain probable cause for the issuance of the warrant. Secondly, he asserts that an affidavit, such as the one in this case, containing only conclusory allegations does not qualify the issuance of the warrant for the "good faith exception" to the exclusionary rule.

Defendant specifically argues the two gaps in surveillance and the fact that there is no direct evidence that the firearms were carried into the house support his basis for calling the warrant conclusory. He argues that it is equally likely the "black gym bag" carried into the house was the child's back pack. The affidavit, however, contained no mention that the child carried anything into the vehicle from the school.

The United States has replied that the "good faith" issue should be resolved first, and that the Court would need to resolve the probable cause issue only if it found the good faith exception did not apply.

The Court will first consider the specific weaknesses alleged by Defendant.

**A.  *Gaps in surveillance***

The affidavit candidly advised the magistrate judge that the surveillance on the Navigator lapsed twice after the boxes containing the purchased firearms were carried into the vehicle. The first gap was for 30 seconds, but they indicate they could tell that nothing was switched from the Navigator to Harris' Expedition during that period. The second gap was for 15 minutes from 1:00 to 1:15 p.m. Defendant is correct in surmising that anything could have happened during that period.

Courts have recognized that police surveillance efforts are often in difficult circumstances in order to avoid detection and it is possible that the subject of the surveillance may be moved. *Illinois v. Andreas*, 463 U.S. 765, 772 (1983); *United States v. Butler,* 904 F.2d 1482, 1485 (10th Cir. 1990). In the context of a "border search" of a package found to contain controlled substance, and then delivered in a controlled delivery, the Eleventh Circuit has found that a "gap in surveillance" did not create a significant likelihood that the contents of the container were changed. *Richards v. United States*, 837 F.2d 965, 966-67 (11th Cir. 1988).

Although the facts of those cases are somewhat different, they support the principle that a gap in surveillance may affect the likelihood of an item being changed, but the briefness of the gap reduces that likelihood.

In *United States v. Buck,* 804 F.2d 239, 243 (2d Cir. 1986), two gaps in surveillance of a person transporting a firearm, one of 20-30 minutes and one of 90 minutes, did not prevent a jury from finding the defendant had transported the firearm across state lines. Given the difference in standards between a trial and a probable cause affidavit, the brief gaps in surveillance in the instant case, which were called to the magistrate judge's attention in the affidavit, do not negate the reasonable possibility of probable cause being

found.[4]

### B. *No direct evidence that the firearms were carried into the house*

Defendant relies primarily on three cases for the proposition that a lack of evidence that the object of the warrant is in the residence to be searched invalidates the warrant. In *United States v. Lockett,* 674 F.2d 843 (11th Cir. 1982), the court reversed a conviction based evidence that dynamite was found at the defendant's residence. Although the affidavit had evidence that defendant had purchased dynamite approximately 10 days previously, the affidavit had nothing except the agent's conclusory belief that the dynamite was at the residence. Although the court recognized that inferences can be drawn from circumstances involved, the facts of that case did not allow such an inference. *Id.* at 846-847.

Similarly, in an earlier case of *United States v. Flanagan*, 423 F.2d 745 (5th Cir. 1970),[5] the court declined to uphold a warrant to search the defendant's residence when it was based on an affidavit that recited facts concerning a burglary in Houston, the defendant's arrest in Ft. Worth in a car containing some of the stolen items, the defendant's record as a convicted felon, and the officers' belief that the remaining stolen jewelry would be found at the defendant's residence. There were no factual observations to tie the stolen property to the defendant's residence. *Id.* at 747.

---

[4]In *United States v. Evers,* 552 F.2d 1119, 1121 (5th Cir. 1977), a four-hour gap in surveillance of a vehicle containing marijuana did not eliminate the probable cause for a warrant.

[5]In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Lastly, Defendant cites *United States v. Martin,* 29 F.3d 1308 (11th Cir. 2002), in which there was evidence that an individual had sold stolen weapons to the occupants of the premises while inside the premises. The district court had suppressed the items seized under a search warrant on the basis there was insufficient probable cause. The United States appealed based on the "good faith exception," not contesting the probable cause determination. In discussing probable cause, the Eleventh Circuit noted that an affidavit should establish a connection between the defendant and the place to be searched and a link between the residence and any criminal activity. *Id.* at 1314. The court focused on the third circumstance detailed in *Leon,* whether the affidavit for the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon, supra,* 468 U.S. at 923. Without ruling on whether probable cause existed, the *Martin* court found there was "enough indicia of probable cause" that the officer's reliance upon the warrant was not entirely unreasonable. *Martin, supra,* 297 F.3d at 1314-15.

### C. *Was there good faith in this case?*

Although the *Lockett* and *Flanagan* cases illustrate Defendant's argument of the necessity of connecting the items to be seized – the firearms – to the residence, and the defendant to the residence, the Court does not find they control the instant case. First, both were decided prior to the Supreme Court establishing the "good faith exception" to the exclusionary rule. *See Leon, supra,* 468 U.S. 897. Second, there was at least a modicum of additional evidence in the instant case tying the firearms to the house.

Recognizing possible inferences from the circumstances in the case, the affidavit establishes that the firearms were in the Navigator on November 15, 2004; and that unless

removed during the two brief lapses in surveillance, they remained there when the defendant drove to his house.   A slight additional inference that the firearms were for the defendant may be argued from the fact that he drove Thomas to the firearm store that day. Thomas had driven himself on some earlier occasions and had his Expedition apparently available at work that day.  Thus, the facts that the defendant drove him, and that the firearms apparently remained in defendant's vehicle, provide some inference that Defendant had a connection to the firearms, possibly as the beneficiary of a straw purchase given his felon status and inability to purchase in his own name.

Once arriving at his residence, he retrieved something from the back of the vehicle and carried a black gym bag with apparent weighted object in it into the house.  Although it is clear there is no positive proof what was in the bag, that is an additional factor not present in either *Lockett* or *Flanagan.*  Defendant argues it could have been a book bag belonging to the child, but the affidavit mentions no such book bag and the bag was described specifically as a gym bag.  The Court is confined to the four corners of the affidavit in its analysis.

Courts have allowed inferences of contraband items being likely to be located in a defendant's residence in some situations.  In *United States v. Morris*, 647 F.2d 568 (5th Cir. 1981), the court upheld a search warrant for the residence of a defendant based upon the fact two bank robberies recently had been committed, with use of a firearm, that the perpetrator had subsequently been identified as the defendant (although the opinion does not say how) and that a car matching the description of that used in the first robbery was seen by a policeman in front of defendant's house.  There was no information the defendant had carried anything into his house. The last robbery was within the "last several

days." *Id.* at 573. The court found that the affidavit had "provided sufficient reliable information from which [the judge] could reasonably conclude that the items sought in the warrant were probably at the location to be searched." *Id.*

In the instant case, there is evidence of the vehicle containing the firearms going to the residence on the same day the firearms were purchased, and a basis for belief the firearms were in the vehicle at the time. Certainly the affidavit was not so "bare bones" in stating the factual basis for probable cause that it would be viewed as wholly conclusory.

In *United States v. Glinton*, 154 F.3d 1245 (11th Cir. 1998), the court analyzed the conclusory allegations exception to good faith rule in *Leon*. Similar to the instant case, officers observed the defendant taking a "bag" in and out of the home, the contents of which were not positively known. *Id.* at 1257. However, in viewing the totality of circumstances of the case, the *Glinton* court declined to find the affidavit bare-boned such that the presented facts stated nothing more than conclusory allegations. *Id.*

The facts in the instant case aren't overwhelmingly in favor of probable cause, but the affidavit contained enough indicia of probable cause that the ATF agent's reliance upon the warrant was not unreasonable. None of the other exceptions to "good faith" under *Leon* are presented by the case.

Thus, the Court finds the "good faith exception" should be applied in the case. Given the sufficiency of the affidavit is the only attack on the warrant, the undersigned respectfully **recommends** the Motion to Suppress (Doc. #14) should be **DENIED**.

**DONE AND ENTERED** at Jacksonville, Florida this 8th day of April, 2005.

_Thomas E. Morris_
**THOMAS E. MORRIS**
United States Magistrate Judge

Copies to:
U.S. Atty. (Talbot)
William J. Sheppard
Hon. Timothy J. Corrigan